UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
WASHINGTON MUTUAL BANK,

        Plaintiff,

v.

Case No. 14-cv-13624
Honorable Gershwin A. Drain

FIRST AMERICAN TITLE INSURANCE
COMPANY,

        Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES [#11]

### I. INTRODUCTION

On September 18, 2014, Plaintiff, Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank ("FDIC-R"), filed a Complaint against Defendant, First American Title Insurance Company ("First American"). *See* Dkt. No. 1. In the Complaint, FDIC-R brings a single count of breach of contract against First American. *Id.* FDIC-R alleges that First American refused to honor its obligations under a Closing Protection Letter (the "CPL") issued in connection with a residential real estate transaction financed by Washington Mutual Bank ("WaMu"). *Id.* FDIC-R seeks damages from First American due to losses suffered as a result of purported fraud, dishonesty, and misconduct of First American's authorized issuing agent. *Id.* FDIC-R contends that First American agreed to indemnify FDIC-R for the actions of the authorized issuing agent under the CPL. *Id.*

In response to FDIC-R's Complaint, First American has asserted several affirmative defenses. *See* Dkt. No. 4. Presently before the Court is FDIC-R's Motion to Strike Certain Affirmative Defenses. *See* Dkt. No. 11. Specifically, FDIC-R seeks dismissal of First American's Third, Fourth, Seventh, Ninth, and Tenth affirmative defenses. This matter is fully briefed and a hearing was held on January 26, 2015. For the reasons discussed herein, the Court **GRANTS** FDIC-R's Motion to Strike Certain Affirmative Defenses.

## II. LAW & ANALYSIS

### A. Legal Standard

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may strike improper material from pleadings either *sua sponte* or following a motion of a party. *See* Fed. R. Civ. P. 12(f)(1), (2). "Although the action of striking a pleading should be used sparingly by the courts, motions to strike are generally granted where the allegations are clearly immaterial to the controversy or would prejudice the movant." *Spizizen v. Nat'l City Corp.,* No. 09–11713, 2010 WL 419993, at *2 (E.D. Mich. Feb.1, 2010) (Rosen, J.) (citing *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953)). "Ultimately, the decision to strike a pleading is firmly within the discretion of the court." *Id.* (citation omitted); *see also Sheets v. U.S. Bank, Nat. Ass'n*, No. 14—10837, 2014 WL 5499382, at *2 (E.D. Mich. Oct. 30, 2014) (Steeh, J.).

### B. Legal Analysis

Plaintiff asserts that the Court should strike Defendant's Third, Fourth, Seventh, Ninth, and Tenth affirmative defenses because Plaintiff contends that the affirmative defenses are improper and/or legally insufficient. With respect to Defendant's Third and Fourth affirmative

defenses, Plaintiff cites the Sixth Circuit and other courts throughout the country to argue these defenses should be stricken because FDIC-R does, in fact, have standing to enforce claims under the CPL issued to WaMu.

For Defendant's Seventh, Ninth and Tenth affirmative defenses, Plaintiff contends that contributory negligence is not a valid defense in a breach of contract case. Lastly, Plaintiff contends it will be greatly prejudiced if it is forced to engage in discovery relating to all of the aforementioned affirmative defenses because it will be compelled to expend unnecessary time and expenses associated with discovery. The Court will address these arguments, as well as Defendant's responses, in turn.

### 1. The Court will strike Defendant's affirmative defenses regarding standing given precedent from the Sixth Circuit.

On April 24, 2014, the United States Court of Appeals for the Sixth Circuit upheld a district court decision from the United States District Court for the Eastern District of Michigan and found that the "FDIC [] had all the same rights as WaMu in the CPL, and it may bring a breach of contract claim based on that document." *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 580 (6th Cir. 2014), *as amended* (July 2, 2014).

Here, Defendant requests that the Court abstain from ruling on Plaintiff's Motion to Strike with respect to the standing defenses because "First American is in the process of filing a petition for a writ of *certiorari* to the United States Supreme Court from the Sixth Circuit Decision." Dkt. No. 12 at 9. The Court will not abstain from ruling on Plaintiff's Motion.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977) (quoting *Landis v. North American Company*, 299 U.S. 248, 254,

57 S.Ct. 163, 166, 81 L. Ed. 153 (1936)). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55, 57 S. Ct. at 166.

The Sixth Circuit Court of Appeals has warned "that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council,* 565 F.2d at 396. The party seeking the stay has the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward." *Landis,* 299 U.S. at 255, 57 S.Ct. at 166. The moving party must also show "that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the [stay]." *Ohio Envtl. Council,* 565 F.2d at 396.

"The Supreme Court has articulated specific criteria to examine if considering a stay is appropriate. '[J]udges of the lower courts [ ] apply the same criteria' as the Supreme Court." *United States v. Mandycz*, 321 F. Supp. 2d 862, 864 (E.D. Mich. 2004) (quoting *United States v. Holland,* 1 F.3d 454, 456 (7th Cir. 1993) (brackets in original). Thus, to obtain a stay, "[a]n applicant must demonstrate: (1) a reasonable probability that four Justices would vote to grant certiorari; (2) a significant possibility that the [Supreme] Court would reverse the judgment below; and (3) a likelihood of irreparable harm, assuming the correctness of the applicant's position, if the judgment is not stayed." *Packwood v. Senate Select Comm. on Ethics,* 510 U.S. 1319, 114 S.Ct. 1036, 1037, 127 L.Ed.2d 530 (1994) (Rhenquist, J., in chambers) (citing *Barnes v. E–Systems, Inc. Group Hosp. M1ed. & Surgical Ins. Plan,* 501 U.S. 1301, 1302, 112 S.Ct. 1, 115 L.Ed.2d 1087 (1991) (Scalia, J., in chambers)).

In reviewing these factors, the Court believes that dismissing the affirmative defenses regarding standing and permitting the case to proceed is more efficient than abstaining from

ruling on the matter.  For the first factor, the Court finds there is not a reasonable probability that four Justices would vote to grant certiorari.

To determine whether four Justices would vote to hear such an issue, the Court looks to Rule 10 of the Supreme Court Rules, which state:

> Review on a writ of certiorari is not a matter of right, but of judicial discretion. A petition for a writ of certiorari will be granted only for compelling reasons. The following, although neither controlling nor fully measuring the Court's discretion, indicate the character of the reasons the Court considers:
>
> (a) a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter; has decided an important federal question in a way that conflicts with a decision by a state court of last resort; or has so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of this Court's supervisory power;
>
> (b) a state court of last resort has decided an important federal question in a way that conflicts with the decision of another state court of last resort or of a United States court of appeals;
>
> (c) a state court or a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court, or has decided an important federal question in a way that conflicts with relevant decisions of this Court.

U.S. Sup. Ct. R. 10.  Provision (b) of Rule 10 of the Supreme Court Rules is inapplicable, as this case does not involve a decision by a state court of last resort.  Likewise, provision (a) of Rule 10 appears to be inapplicable because there does not appear to be any conflict between the Sixth Circuit's decision and decisions of other circuits.[1]

---

[1] To the contrary, in reaching its decision, the Sixth Circuit cited its "sister circuits[, which] uniformly have held that parties attempting to rely on the P & A Agreement to invoke a court's jurisdiction lack prudential standing to do so because they are neither parties to nor third-party beneficiaries of the agreement." *JPMorgan Chase Bank, N.A.*, 750 F.3d at 581 (citing *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n,* No. 12–3302–CV, 747 F.3d 44, 48–51, 2014 WL 401303, at *3–5 (2d Cir. Feb. 4, 2014); *Excel Willowbrook, LLC v. JP Morgan Chase Bank, Nat'l Ass'n,* 740 F.3d 972, 979 (5th Cir. 2014); *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.,* 704 F.3d 927, 933 (11th Cir. 2013); *Deutsche Bank National Trust Co. v. FDIC,* 717 F.3d 189 (D.C. Cir. 2013); *GECCMC 2005–C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n,* 671 F.3d 1027, 1036 (9th Cir. 2012)).

Defendant argues that the Court "should stay its ruling because the viability of First American's standing defenses will be directly impacted by First American's appeal to the United States Supreme Court." Dkt. No. 12 at 10. Be that as it may, this case does not appear to present an opportunity to address an important and unsettled aspect of federal law which would warrant Supreme Court Review, as outlined by provision (c) of the Supreme Court Rules.

Thus, Defendant does not satisfy the first of the three factors for obtaining a stay. This is fatal to Defendant's request for a stay because Defendant "must demonstrate" each of the three factors to obtain a stay. *Mandycz*, 321 F. Supp. 2d at 866 (quoting *Packwood,* 114 S.Ct. at 1037). Defendant does not demonstrate "a reasonable probability that four Justices would vote to grant certiorari." *Packwood,* 114 S.Ct. at 1037.

Even if Defendant disagrees with this Court's analysis of the likelihood of Defendant's petition being granted, it cannot be disputed that a petition being granted by the Supreme Court is a rare occurrence.[2] Federal courts are vested with a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483 (1976) (citations omitted). Given this obligation, the Court declines Defendant's request to abstain from ruling on this issue, and strikes Defendant's Third and Fourth affirmative defenses regarding standing in light of the clear precedent in the Sixth Circuit on this issue.

---

[2] *See* Kedar S. Bhatia, *Likelihood of a Petition Being Granted*, DAILY WRIT (Jan. 10, 2013), http://dailywrit.com/2013/01/likelihood-of-a-petition-being-granted/ (analyzing both paid and IFP petitions between 2002 and 2012 to conclude that petitions have a 1.03% overall chance of being granted—with paid petitions standing a 4.29% chance and IFP petitions standing a .172% chance); *see also* Joan Biskupic et al., *The Echo Chamber*, REUTERS (Dec. 8 2014, 10:30 AM), http://www.reuters.com/investigates/special-report/scotus/ ("Persuading the U.S. Supreme Court to hear an appeal is no easy task. Private lawyers asked the justices to consider 10,300 petitions from the 2004 through 2012 court terms, according to a Reuters analysis of Westlaw data. The justices agreed to hear just 5 percent – or 528 – of those appeals.")

**2. The Court will also strike the affirmative defenses regarding "Negligence / Contributory Negligence."**

In its Answer, First American states that its Ninth affirmative defense is for "Negligence/Contributory Negligence." Dkt. No. 4 at 10. The Parties do not dispute that CPLs are indemnity contracts. *See* Dkt. No. 12 at 10 (citing Dkt. No. 11 at 9-10); *see also JPMorgan Chase Bank, N.A.*, 750 F.3d at 579 ("the parties agree that a CPL is an indemnity agreement and not an insurance policy."). Indemnity contracts are construed like any other contract. *See Holmes v. St. Clair Cnty., Mich.*, No. 04-73830, 2005 WL 1684136, at *3 (E.D. Mich. July 18, 2005)

In no uncertain terms, Judge Battani of this District rejected First American's arguments for contributory negligence, and correctly noted that "contributory negligence is not a valid defense in a breach of contract case." *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 795 F. Supp. 2d 624, 633 (E.D. Mich. 2011) *aff'd sub nom.as amended* (July 2, 2014) *JPMorgan Chase Bank, N.A.*, 750 F.3d 573.

This being the case, Plaintiff asserts that all of Defendant's affirmative defenses based on the theory of contributory negligence fail as a matter of law. *See* Dkt. No. 11 at 17. In response, Defendant maintains that Plaintiff misconstrues its negligence defenses, and asserts that it "is not asserting contributory negligence or comparative negligence as a defense to a breach of contract claim." *See* Dkt. No. 12 at 7. Instead, Defendant argues it is "asserting the legal principle that the negligence of an indemnitee will bar the indemnitee from recovery under an indemnity contract when the parties to the contract did not intend for the indemnitee to be indemnified for its own negligence." *Id.* at 12.

In its Reply, the Plaintiff aptly notes that "by acknowledging that it is not pursuing defenses of comparative or contributory negligence, First American effectively concedes that these defenses are inapplicable and, accordingly, should be stricken." Dkt. No. 13 at 4. The

Court agrees and emphasizes that there will be no affirmative defenses for comparative or contributory negligence in this case. *See JP Morgan Chase Bank, N.A.*, 795 F. Supp. 2d at 633.

However, Defendant attempts to distinguish the district court's opinion in *JP Morgan Chase* from the facts at issue here by arguing that in *JP Morgan*, the district court cited Michigan law for the proposition that "one accused of fraud may not raise as a defense the carelessness of the party defrauded." 795 F. Supp. 2d at 632-33 (quoting *Foodland Distributors v. Al-Naimi*, 220 Mich. App. 453, 460, 559 N.W.2d 379, 382 (1996)).

Here, Defendant contends it is making the distinct legal argument that "where the parties do not intend for the indemnitee to be indemnified for its own negligence, the indemnitee's negligence will bar its recovery." Dkt. No. 12 at 10-11 (citing *Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 354, 695 N.W.2d 521, 532-33 (2005)). Defendant emphasizes that "[t]his is a valid legal defense to a claim for contractual indemnification under Michigan law." *Id.* at 11 (citing *Badiee*, 265 Mich. App at 354, 694 N.W.2d at 532-33).

The Court does not dispute Defendant's assertion, but does note that, in Michigan, courts hold that "indemnity clauses need not expressly mention the indemnitee's own acts to provide coverage for them." *Sa v. Red Frog Events, LLC*, 979 F. Supp. 2d 767, 773 (E.D. Mich. 2013) (citing *Badiee,* 265 Mich. App. at 353, 695 N.W.2d 521). While Defendant contends that the language in the CPL at issue "is not broad enough to encompass an agreement to indemnify WaMu for its own negligence," the Court does not reach that conclusion.

The Court emphasizes that "'although an indemnity provision does not expressly state that the indemnitee will be shielded from its own negligence, such language is not mandatory to provide such indemnification.'" *Red Frog Events, LLC*, 979 F. Supp. 2d at 773 (citing *Fischbach–Natkin Co. v. Power Process Piping, Inc.,* 157 Mich. App. 448, 452–53, 403 N.W.2d

569 (1987)); *see also Harbenski v. Upper Peninsula Power Co.*, 118 Mich. App. 440, 454, 325 N.W.2d 785, 791 (1982) ("The contention that the intent to indemnify an indemnitee against his own negligence must be expressly stated has been rejected.")

Looking to the plain language of the CPL at issue, the Court agrees with Judge Battani that First American cannot avoid its indemnification obligations by arguing that WaMu was negligent. Per the plain language of the CPL, the only relevant inquiry in this case is whether First American's issuing agent failed to comply with WaMu's relevant written closing instructions, and whether or not the issuing agent was fraudulent or dishonest in handling WaMu's funds or documents in connection with the closings. *See* Dkt. No. 1-1 at 2.

As Plaintiff points out, adding an additional interpretation that Defendant did not intend to indemnify WaMu for its own negligence would require the Court to "improperly insert[] terms in the CPL where none exist." Dkt. No. 13 at 5 n.5. The Court will not insert additional terms. Instead, the Court will look at the plain language of the contract and conclude that comparative negligence is not a defense to Plaintiff's CPL claim.

### III. CONCLUSION

For the reasons discussed, the Court **GRANTS** FDIC-R's Motion to Strike Third, Fourth, Seventh, Ninth, and Tenth Affirmative Defenses.

SO ORDERED.

Dated: January 30, 2015

/s/Gershwin A Drain  
Hon. Gershwin A. Drain  
United States District Court Judge